**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------- x

ROSA ELBA VENTURA DE PAULINO, *Individually and as p/n/g of R.P.*,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATOIN, ROBERT BRIGLIO, and NEW YORK STATE EDUCATION DEPARTMENT,

Defendants.

-------------------------------------- x

MEMORANDUM DECISION AND ORDER

19 Civ. 222 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Rosa Elba Ventura de Paulino is the mother of R.P, a 7-year-old boy who suffers from several disabilities, including acquired brain injury. (Compl., (ECF No. 10), at 2.) As a result of his disabilities, R.P. is non-verbal and non-ambulatory, and has intensive management needs. (*Id.*) Plaintiff filed this action seeking injunctive relief under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, against Defendants New York City Department of Education, New York State Department of Education, and Impartial Hearing Officer ("IHO") Robert Briglio (collectively, "Defedants"). (*Id.* at 1–2.) Plaintiff seeks an order (1) recusing IHO Briglio from the Plaintiff's due process complaint in the state administrative tribunal,[1] (2) declaring that the International Institute for the Brain ("iBRAIN") is the pendency placement for R.P. for the 2018–2019 school year.[2] (*Id.* at 6–7).

---

[1] This Court understands that IHO Briglio has recused himself from Plaintiff's ongoing due process complaint and that IHO Suzanne Carter is now in charge of the proceedings. (Decl. of Brian Davenport ("Davenport Decl."), (ECF No. 45), ¶ 2.) Accordingly, Plaintiff's request for this Court to recuse IHO Briglio is moot.

[2] Plaintiff also seeks a judgment for any other equitable relief and damages, including costs and attorneys' fees, that the Court finds "just and proper" as compensation for the Defendants' failure or delay in ordering that iBRAIN be deemed R.P.'s pendency placement for the 2018–2019 school year. (Compl. at 7.)

Before this Court is Plaintiff's January 16, 2019 application for a temporary restraining order and a preliminary injunction (1) vacating IHO Briglio's Findings of Fact and Decision on Pendency dated November 22, 2018, which denied R.P's pendency placement under the IDEA at iBRAIN for the 2018–2019 school year, and (2) declaring that iBRAIN is R.P.s pendency placement for the 2018–2019 school year, and (3) immediately awarding payment to iBRAIN for the cost of R.P.'s full tuition for the 2018–2019 school year. (Order to Show Cause for Prelim. Injunction and Temp. Restraining Order ("OSC"), (ECF No. 14), at 1–2.)[3] This Court agrees with Defendants that the current pendency placement pursuant to the "stay-put" provision of the IDEA lies at iHOPE, not iBRAIN, because the Plaintiff has not challenged the adequacy of iHOPE's Individualized Education Program ("IEP"). (Mem. Of Law In Opp. To Pl.'s App. For A Prelim. Injunction And A Temp. Restraining Order ("Opp."), (ECF No. 27), at 22.) Therefore, this Court DENIES Plaintiff's application for a temporary restraining order and a preliminary injunction.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

R.P. attended iHOPE during the 2017–2018 school year. (Compl. at 3.) At some point during that year, Plaintiff filed a due process complaint pursuant to the IDEA seeking reimbursement of all tuition and costs associated with R.P.'s studies at iHOPE, arguing that the IEP offered to R.P. at iHOPE met his extensive needs. (Affirm. of Karl J. Ashanti in Support of Order to Show Cause ("Ashanti OSC Affirm."), (ECF No. 34), at ¶ 6.) On June 19, 2018, IHO Ellen Cutler-Igoe held in favor of Plaintiff, finding "iHOPE to be an appropriate placement" for R.P. because "its staff implemented goals and behavior needs consistent with that of R.P.'s educational needs." (*Id.*, Ex. A at 6–7.) IHO Cutler-Igoe also awarded Plaintiff all tuition and

[3] Defendants argue that Plaintiff's Application should be denied due to insufficient service because, although Plaintiff's counsel hand delivered the OSC, they did not hand deliver the documents annexed to the OSC, emailing them instead. (Opp. at 9.) Although it is true that "this was not in accordance with the personal service required by the Order" (*Id.*), Defendants' lack of service objection is moot given that they received these documents and they were able to file a timely opposition to Plaintiff's Application, as well as attend oral argument on it.

costs associated with R.P.'s studies at iHOPE for the 2017–2018 school year. (*Id.*) On June 7, 2018, before the outcome of the due process complaint, Plaintiff unilaterally enrolled R.P. at iBRAIN without notifying the Department of Education ("DOE"). (Ashanti OSC Affirm., Ex. J at 6.)

On June 21, 2018, two days after IHO Cutler-Igoe's decision—and *two weeks after* enrolling R.P. in iBRAIN—Plaintiff gave Defendants 10-day written notice that she "intended" to enroll R.P. in iBRAIN for the 2018–2019 school year. (*Id.*, Ex. B.) She then filed a second due process complaint on July 9, 2018, alleging that Defendants failed to provide a Free and Appropriate Education ("FAPE") to R.P. for the 2018–2019 school year, and sought a pendency order requiring Defendants to fund R.P.'s placement at iBRAIN pending the outcome of the due process proceedings. (*Id.* ¶ 9.)

IHO Robert Briglio held the first hearing on Plaintiff's second complaint on August 27 2018, during which Plaintiff attempted to argue that iBRAIN is R.P.'s pendency placement because iBRAIN's IEP for the 2018–2019 school year is "substantially similar" to iHOPE's IEP for the 2017–2018 school year. (*Id.* ¶ 11.) But IHO Briglio issued an Interim Order on September 4, 2018, refusing to entertain Plaintiff's "substantial similarity" argument until Plaintiff produced "evidence regarding why R.P. can no longer continue attending iHOPE for the 2018–2019 school year. . . in the form of documentation from iHOPE that R.P. can no longer attend the school." (*Id.*, Ex. D at 11.) Because Plaintiff failed to provide such evidence, IHO Briglio again refused to hear arguments of substantial similarity between iBRAIN and iHOPE at the second hearing held on October 26, 2018. A month later, on November 22, 2018, he issued a final Finding of Fact and Decision on Pendency, holding that iHOPE is R.P.'s pendency placement, pursuant to IHO Cutler-Igoe's decision in Plaintiff's prior due process complaint. As of the filing of this action, another

impartial hearing on the merits of the denial of a FAPE for the 2018–2019 school year was scheduled to take place on January 31, 2019. (*Id.* at ¶ 20.)

Plaintiff filed Notices of Intention to Seek Review of IHO Briglio's September 4, 2018 Interim Order and November 22, 2018 Final Decision on Pendency with the Office of State Review ("SRO") on September 20, 2018, and December 14, 2018, respectively. (Attorney Decl. of Janice Birnbaum ("Birnbaum Decl."), (ECF No. 28), at 2–4.) However, Plaintiff never perfected the appeals, so they lapsed forty days later, on October 30, 2018, and January 23, 2019, respectively.

## II. PLAINTIFF'S APPLICATION IS DENIED

Plaintiff's application for a temporary restraining order and a preliminary injunction is DENIED because Plaintiff does not challenge the adequacy of R.P.'s IEP at iHOPE.

### 1. Plaintiff Has Article III Standing.

Defendants first argue that this Court lacks subject matter jurisdiction. Central to the question of whether this Court has subject-matter jurisdiction over this case is whether Plaintiff has legal standing to sue. *See Cortlandt St. Recovery Corp. v. Hellas Telecomms. I, S.a.r.l*, 790 F.3d 411, 416–17 (2d Cir. 2015). The "irreducible constitutional minimum of standing" consists of three elements: "(1) 'an injury in fact' to 'a legally protected interest' that is both '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical,' (2) 'a causal connection between the injury and the conduct complained of,' and (3) that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Crupar–Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 79 (2d Cir. 2017) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). As the party invoking this Court's jurisdiction, Plaintiff bears the burden of establishing standing, and at the pleading stage, she must do so by "clearly alleg[ing] facts demonstrating each element." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted).

Plaintiff first argues that she has suffered injury in fact in the form of a violation of [her] procedural right, under the IDEA, to a pendency placement at iBRAIN. (Mem. Of Law In Supp. Of Order To Show Cause For Prelim. Injunction And Temp. Restraining Order ("Pl.'s Mem."), (ECF No. 35), at 6.) Indeed, the IDEA contains a "stay-put" provision, which provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 415(j). This "stay-put" provision is a procedural right under the IDEA. *See A.S. ex rel. P.B.S. v. Bd. Of Educ. for Town of W. Hartford*, 47 Fed. App'x 615, 616 n.2 (2d Cir. 2002).

Standing jurisprudence recognizes that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," as long as the violation "entail[s] a degree of risk sufficient to indicate a resulting concrete harm." *Spokeo*, 136 S. Ct. at 1550. In the context of the IDEA, the Second Circuit has held that "Congress intended to create procedural rights, the violation of which would constitute an injury in fact." *Heldman v. Sobol*, 962 F.2d 148, 155 (2d. Cir. 1992); *see also S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 358 (S.D.N.Y. 2009) ("The denial of . . . a procedural right created by the IDEA . . . constitutes an injury sufficient to satisfy the standing requirement."). Because the "stay-put" provision is one such procedural right, it follows that Plaintiff's challenge to the district's pendency placement constitutes injury in fact for standing to sue under Article III.

Defendants argue that Plaintiff's procedural pendency right has not been violated because "[R.P.] has a placement—it lies at iHOPE, not iBRAIN." (Opp. at 18.) But even if that is true, it goes to the merits of Plaintiff's case. Instead, this Court is required to assume Plaintiff's allegations are true for purposes of reviewing dismissal for lack of standing. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Heldman*, 962 F.2d at 154. Accordingly, taking Plaintiff's allegations

to be true, this Court concludes that she has alleged injury in fact in the form of the alleged violation of her son's procedural right to a pendency placement pursuant to the IDEA's "stay-put" provision.

Alternatively, Plaintiff also argues that she has suffered injury in fact in the form of her financial obligation to pay the tuition and costs associated with R.P.'s studies at iBRAIN for the 2018–2019 school year. (Pl.'s Mem. at 9.) The Second Circuit recognized that a parent's "contractual obligation to pay private-school tuition . . . even if her IDEA claim against [Defendants] fails to result in funding," is sufficient to establish injury in fact for standing purposes. *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 457 (2d Cir. 2014). To support her allegation that she is obligated to pay, Plaintiff points to Section 9 of the Enrollment Contract, which stipulates that if R.P. is denied a pendency placement at iBRAIN, Plaintiff can withdraw R.P. from iBRAIN and agree to a payment schedule for any outstanding financial obligations at the time of withdrawal:

> It is understood Parent may seek public funding from the local school district to pay for Student's Full Tuition due to [iBRAIN] for the School Year by asserting Student's due process rights by seeking an Order on Pendency. In the event Parent seeks and is denied an Order of Pendency by an Impartial Hearing Officer for all or part of the Full Tuition funding from the local school district due under this enrollment Contract, Parent will be permitted to immediately withdraw Student from [iBRAIN] by terminating this contract per Section 11. *Parent will be required to execute a payment schedule to comply with the contractual obligations based upon the financial need of Parent for any balances due to iBRAIN on the date of withdrawal.*

(Ashanti OSC Affirm., Ex. J., Addendum to Enrollment Contract at 1) (emphasis added). According to this provision, even if Plaintiff withdraws R.P. from iBRAIN, she would suffer injury in the form of liability for the tuition and costs incurred by R.P. at iBRAIN prior to the date of withdrawal.

In response, Defendants point to Section 12 of the Enrollment Contract, which states that "[R.P.] will not be expelled from school without at least sixty days' notice, and only if [Plaintiff]

fails to cooperate with the school district and take all steps necessary to secure such funding."[4] (Opp. at 11.) Further, Defendants underscore that Plaintiff does not "allege that [R.P.] will be expelled from school" or that "iBRAIN has demanded payment from [her]" because of IHO Briglio's order denying pendency placement at iBRAIN. (*Id.* at 10.) In other words, Defendants suggest that Plaintiff does not need to withdraw R.P. from iBRAIN after the denial of the pendency placement there. Instead, she should fully cooperate with the independent hearing process in hopes that, at its conclusion, iBRAIN is designated as R.P.'s placement for the 2018–2019 school year.

But Section 12 does not speak to a scenario where Plaintiff cooperates fully to secure funding from the school district and nonetheless fails to secure such funding. If that happens, under Sections 9 and 11 of the Enrollment Contract, Plaintiff must pay the tuition and costs associated with R.P.'s studies at iBRAIN.[5] The Second Circuit entertained this exact situation in *E.M.*, where the agreement between the parent and the school similarly stated that the parent assumed complete responsibility to pay for the student's tuition and fees if the school district was unwilling to pay. *See* 758 F.3d at 457. The court emphasized that, like here, "E.M.'s written contract nowhere conditioned her tuition liability on her ability to obtain funding from the Department." *Id.* at 458. Even though there was no imminent demand for the tuition payments, the Second Circuit held in that case that "fearing exposure to suit for nonpayment" in the future

[4] The Enrollment Contract stipulates that "[i]n the event Parent'(s)/Guardian(s) decides to seek direct funding from the local school district for their child's placement and related services at [iBRAIN], Parent'(s)/Guardian(s) agrees to take all necessary steps to secure funding and to cooperate fully in the process required to secure such funding. In the event that Parent'(s)/Guardian(s) does not cooperate with the process, [iBRAIN] may elect upon 60 days' notice to terminate the Student's enrollment at [iBRAIN]." (Ashanti OSC Affirm., Ex. J., Enrollment Contract at 3.)

[5] Section 9 of the Enrollment Contract provides that "[i]n the event Parent seeks a Findings of Fact and Decision but is denied all or part of the Full Tuition funding from the local school district due under this Enrollment Contract by a final administrative or judicial decision, including all state and federal appeals resolving the claim for such funding, Parent will be permitted to immediately withdraw Student from iBRAIN by terminating this contract per Section 11." (Ashanti OSC Affirm., Ex. J., Addendum to the Enrollment Contract at 2.)

In turn, Section 11 stipulates that "Parent [] will be responsible to pay all outstanding tuition and fees then due and owing, if any, for all months prior to the month in which Termination Notice is received. All such fees shall be paid within 10 calendar days after Termination Notice is received by iBRAIN." (Ashanti OSC Affirm., Ex. J., Enrollment Contract at 3.)

constitutes injury in fact for standing purposes under the IDEA. *Id.* at 459; *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v Amensty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)) ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur."). Following that precedent, Plaintiff has also alleged injury in fact in this case because she is liable to iBRAIN for R.P.'s tuition and costs if she does not secure funding from the district.

Accordingly, Plaintiff has Article III standing to bring this action.

**2. Plaintiff Did Not Need To Exhaust All Administrative Remedies.**

Defendants also argue that IHO Briglio's order is "final and effectively unreviewable at this junction since review to this Court lies in an SRO order, and no such order exists because [Plaintiff] failed to perfect [her] administrative appeal." (Opp. at 14.)

It is generally true that in New York, under the IDEA's exhaustion requirement,[6] "appeal may be taken to either the state or federal courts only *after* the SRO has rendered a decision." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (emphasis added). But the IDEA also carves out three exceptions to this exhaustion requirement: if "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Id.* at 199. In *Murphy*, the Second Circuit unequivocally held that "an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to this jurisdictional prerequisite." *Id.* This

[6] § 1415(l) of the IDEA stipulates that "[n]othing in this chapter will be construed to restrict or limit the rights, procedures, and remedies available under the Constitution. . . or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." *Polera v. Bd. Of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d. Cir. 2015) (quoting 20 U.S.C. § 1415(l)).

is because "the administrative process is inadequate to remedy the violations of [the "stay-put" provision] because, given the time-sensitive nature of the IDEA's stay-put provision, an immediate appeal is necessary to give realistic protection to the claimed right." *Id.* (citations omitted).

Defendants nonetheless suggest that *Murphy* does not apply here for two reasons. First, because there is no underlying decision in the Parent's favor from the IHO, SRO, or from a Court, which means that "the pendency placement is not at iBRAIN, and [Plaintiff] lack[s] an agreement to enforce against [Defendants] in the [manner] of the plaintiffs in *Murphy*." (Opp. at 16.) Again, whether the pendency placement lies at iBRAIN or elsewhere has to do with the merits of Plaintiff's pendency claim; it has nothing to do with Plaintiff's exhaustion of remedies. Furthermore, courts in this circuit have repeatedly held that, under the IDEA, plaintiffs bringing pendency claims do not need to exhaust all administrative remedies, even if the underlying administrative decision on pendency is not in their favor. *See e.g., Doe v. East Lym Bd. of Educ.*, 790 F.3d 440, 455 (2d Cir. 2015) (holding that parent was not required to administratively exhaust her pendency claim even though "[t]he administrative hearing officer ruled in favor of the Board."); *M.G. v. New York City Dept. of Educ.*, 982 F. Supp. 2d 240, 247–248 (S.D.N.Y. 2015) (holding that the parents were not required to exhaust their claim to additional ABA services for their disabled child even if it was unclear if those services were included in the child's then-current placement). In other words, *Murphy*'s exception to the administrative exhaustion requirement is not cabined to instances where the parents prevail at the independent hearing stage.

Second, Defendants suggest that "the foundation on which *Murphy* rests, that exhaustion of pendency disputes is futile or inadequate because in the interim the Student will be deprived of the placement by ejectment or the ponderous length of the IDEA due process hearings, does not exist here." (Opp. at 13.) Surely the Second Circuit entertained in *Murphy* the possibility that "if the child is ejected from his or her current educational placement while the administrative process

sorts out where the proper interim placement should be, then the deprivation [of the student's right to a stable learning environment] is complete." *Murphy*, 297 F.3d at 200. This reasoning cannot mean that the exhaustion of remedies exception for pendency claims only applies in cases where the student demonstrates an immediate risk of ejection from his or her current school. In fact, many of the cases that apply this exception, *including Murphy*, involve situations where the parents sought *reimbursement* for educational expenses they already paid for themselves. *See e.g.*, *Murphy*, 297 F.3d at 198 ("Plaintiffs challenged Arlington's placement of their son as inadequate to serve his special needs and sought reimbursement for the cost of [his] tuition at Kildonan for the 1998–1999 year"); *Doe*, 709 F.3d at 445 ("the court ordered the Board to reimburse the Parent for any such services she actually paid for out of pocket"); *Avaras v. Clarkstown Central School District*, 15 Civ. 9679 (NSR), 2018 WL 4103494 at *2 (S.D.N.Y. Aug. 28, 2018) ("Plaintiff also seeks retroactive, current and prospective tuition."). In those cases, as here, there was no evidence that the student would be immediately ejected from the school if the parents did not prevail in their "stay-put" claim.

Accordingly, Plaintiff is not barred from bringing this suit for failure to perfect the administrative appeals of IHO Briglio's September 4th Interim Order and November 22nd Final Decision with the SRO.

**3. The Traditional Test For A Preliminary Injunction Does Not Apply To The IDEA's Stay-Put Provision.**

Traditionally, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *UBS Fin. Servs., Inc. v. West Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir.2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Therefore, Defendants argue that to obtain a preliminary injunction, Plaintiff must establish: "[1] that [she] is likely to succeed on the merits, [2] that [she] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [her] favor, and [4] that an injunction is

in the public interest." *Winter*, 555 U.S. at 20; *see also* Fed. R. Civ. P. 65(a) (preliminary injunctions). Not only that, Defendants add that this case requires Plaintiff to show "a clear or substantial likelihood of success" on the merits because she seeks a mandatory injunction, that is, an injunction that "will alter rather than maintain the status quo." *Rodriguez ex rel. v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999).

But the Second Circuit held in *Zvi D. by Shirley D. v. Ambach* that the "stay-put" provision "is, in effect, an automatic preliminary injunction. The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and balance of hardships." 694 F.2d 904, 906 (2d Cir. 1982); *M.G.*, 982 F. Supp. 2d at 247 (citing *Arlington Cent. School Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) ("pendency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships.") As a result, Plaintiff is not required to meet the traditional test for a preliminary injunction because she is attempting to raise a pendency claim under the IDEA's "stay-put" provision.

**4. Plaintiff's Application Is Denied.**

Although Plaintiff need not meet the traditional test for a preliminary injunction, she is also not entitled to an automatic pendency placement at iBRAIN, because she does not allege that iHOPE's IEP and placement are inadequate in meeting R.P.'s educational needs.

Defendants argue, and this Court agrees, that "the preliminary injunction that [Plaintiff] seek[s]—a 'pendency' placement at iBRAIN—is not the pendency placement protected under the IDEA. That placement is at iHOPE." (Opp. at 22.) Indeed, to properly challenge a district's placement under the IDEA's "stay-put" provision, a parent who unilaterally moves his or her child to a different placement must first challenge the adequacy of the district's placement's IEP. *See*

*A.S. ex rel. P.B.S.*, 47 Fed App'x at 617 ("Because the challenged IEP was adequate and the Board offered [the child] a 'free and appropriate education' consistent with the IDEA, it is unnecessary to consider whether the private educational services obtained by the parents were appropriate to the child's needs"); *M.C. ex rel Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 65 (2d Cir. 2000) ("Only if a court determines that a challenged IEP was inadequate should it proceed to the second question" of whether the parent's unilateral placement also meets the child's educational needs); *see also Murphy*, 297 F.3d at 198 ("Plaintiffs challenged [the district's] placement of their son as inadequate to serve his special educational needs"). Here, Plaintiff does not argue that iHOPE's IEP is inadequate, or that it fails to meet R.P.'s educational needs in any way. In fact, Plaintiff's entire argument relies on the opposite premise that "the educational program offered to R.P. during the 2017–2018 year at iHOPE met R.P.'s extensive needs." (Pl.'s Mem. at 2.) Accordingly, unless Plaintiff challenges the adequacy of iHOPE's IEP, the only "status quo" that this Court will enforce pursuant to *Zvi* is a placement at iHOPE.

This reasoning is wholly in line with the spirit of *Murphy* and its progeny, which was to "give realistic protection [to] a student's right to a stable learning environment during what may be a lengthy administrative and judicial review." *Murphy*, 297 F.3d at 199. If Plaintiff is not challenging the adequacy of R.P.'s IEP at iHOPE, then her decision to unilaterally unenroll R.P. from iHOPE risks violating his right to a stable learning environment.

Accordingly, Plaintiff is not entitled to a preliminary injunction declaring that iBRAIN is R.P.'s pendency placement under the IDEA for the 2018–2019 school year because she does not challenge the adequacy of R.P.'s IEP at iHOPE. Instead, absent any allegations that iHOPE's IEP

is failing to meet R.P.'s educational needs,[7] this Court finds that the proper pendency placement for purposes of the IDEA lies at iHOPE.

## III. CONCLUSION

Plaintiff's application for a temporary restraining order and a preliminary injunction, ECF No. 14, is DENIED.

Dated: March 20, 2019
New York, New York

SO ORDERED.

George B. Daniels

GEORGE B. DANIELS
United States District Judge

[7] This Court notes that Plaintiff's due process complaint on whether Defendant denied R.P. a FAPE for the 2018–2019 school year is ongoing in the state administrative tribunal. (*see* Opp. at 14–15, 22–23.) Plaintiff can therefore challenge the adequacy of R.P.'s IEP at iHOPE in upcoming impartial hearings and related proceedings. If she fails, however, to demonstrate to IHO Suzanne Carter that iHOPE does not meet R.P.s educational needs for the 2018–2019 school year, Defendant will have satisfied its duty to provide R.P. with a FAPE and Plaintiff will not be entitled to reimbursement for the fees and costs associated with R.P.'s studies at iBRAIN. *See School Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373–374 ("[P]arents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk. If the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement").